1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11    RUDY R. CASTILLO,

12               Plaintiff,                    No. 2:22-cv-00588-TLN-AC

13         v.

14    MARIS GOLDSBOROUGH,                       **ORDER**

15               Defendant.

16

17         This matter is before the Court on Defendant Maris Goldsborough's ("Defendant")

18    Motion for Summary Judgment.  (ECF No. 22.)  Plaintiff Rudy R. Castillo ("Plaintiff") filed an

19    opposition.  (ECF No. 24.)  Defendant filed a reply.  (ECF No. 27.)  For the reasons set forth

20    below, Defendant's motion is DENIED.

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

1

1        **I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

2        The instant action arises from Defendant's warrantless entry onto Plaintiff's land.  On

3    April 1, 2020, at around 10:20 a.m., Defendant, a police officer, responded to 871 West A Street,

4    City of Dixon, to assist Officer Geisser with a suspicious check involving Plaintiff.  (ECF No. 24-

5    1 at 2.)  While at the scene, Defendant received information from Officer Geisser that a woman

6    had fallen out of Plaintiff's truck after it abruptly turned onto the front lawn but before it came to

7    a stop, and the woman had then fled into the backyard through the side gate of the residence.  (*Id.*

8    at 2–3)  Defendant and Officer Tegeler then entered Plaintiff's backyard.  (*Id.*)  Upon locating the

9    woman, Defendant and Officer Tegeler explained they were there to check on her well-being due

10   to the reported fall.  (*Id.*)  In response, the woman called the officers "assholes" and made it clear

11   she did not want police assistance.  (*Id.*)  Defendant and Officer Tegeler then exited the backyard,

12   informing the other officers the woman was unharmed and had declined help.  (*Id.* at 3.)  The

13   entire duration of Defendant's presence in the backyard was just over a minute.  (*Id.*)

14       Plaintiff filed this action on April 1, 2022, asserting several claims under 42 U.S.C. §

15   1983 ("§ 1983").[2]  (ECF No. 1.)  Plaintiff later filed a First Amended Complaint ("FAC"),

16   asserting two § 1983 claims: (1) a Fourth Amendment claim for unconstitutional search against

17   Defendant (Claim One), and (2) a claim for violation of Plaintiff's constitutional rights against

18   Officer Geisser (Claim Two).  (ECF No. 14 at 13–14.)  The Court dismissed Claim Two, leaving

19   only Claim One pending against Defendant.  (ECF No. 21.)  Defendant now moves for summary

20   judgment on this last remaining claim.  (ECF No. 22.)

21       **II.    STANDARD OF LAW**

22       Summary judgment is appropriate when the moving party demonstrates no genuine issue

23   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

24   R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970).  Under summary

25   ───────────────

[1]        The following facts are undisputed unless stated otherwise.

26
27   [2]        Mick Geisser ("Geisser"), Gabriel Hollingshead ("Hollingshead"), Mike Tegeler
     ("Tegeler"), Robert Thompson ("Thompson"), and the City of Dixon ("the City") were also
28   named as defendants in this action, but the claims against them have been dismissed.  (*See* ECF
     No. 1 at 1; *see also* ECF No. 21.)

1  judgment practice, the moving party always bears the initial responsibility of informing the

2  district court of the basis of its motion, and identifying those portions of "the pleadings,

3  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

4  which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v.*

5  *Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof

6  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

7  solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id*. at

8  324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a

9  party who does not make a showing sufficient to establish the existence of an element essential to

10  that party's case, and on which that party will bear the burden of proof at trial. *Id*. at 322.

11       If the moving party meets its initial responsibility, the burden then shifts to the opposing

12  party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus.*

13  *Co. v. Zenith Radio Corp*., 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv.*

14  *Co*., 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute,

15  the opposing party may not rely upon the denials of its pleadings but is required to tender

16  evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

17  support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must

18  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

19  suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

20  the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

21  the nonmoving party. *Id*. at 251–52.

22       In the endeavor to establish the existence of a factual dispute, the opposing party need not

23  establish a material issue of fact conclusively in its favor. *First Nat'l Bank*, 391 U.S. at 288–89.

24  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the

25  parties' differing versions of the truth at trial." *Id*. Thus, the "purpose of summary judgment is to

26  'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

27  trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

28  amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id*. at 587.

### III.    ANALYSIS

Defendant argues he cannot be held liable for an unlawful search under the Fourth Amendment because: (1) the "De Minimis Doctrine" applies to his entry; and (2) he is entitled to qualified immunity.  (ECF No. 22-1 at 5–10.)  The Court addresses these arguments in turn.

#### A.    De Minimis Doctrine

Defendant argues the de minimis doctrine applies to his entry because his entry into Plaintiff's curtilage lasted just over a minute and was therefore only "benign and fleeting."[3]  (ECF No. 22-1 at 7–8.)  Although Plaintiff does not address this argument in opposition, the Court rejects Defendant's attempt to sidestep the Fourth Amendment.

Defendant relies on *Bingham v. City of Manhattan Beach*, to support his argument that his "benign and fleeting" intrusion did not violate Plaintiff's Fourth Amendment right.  (ECF No. 22-1 at 7–8 (citing 341 F.3d 939, 947 (9th Cir. 2003), *overruled on other grounds by Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 956 n.14 (9th Cir. 2010)).)  In *Bingham*, the Ninth Circuit

---

[3]    To the extent Defendant is arguing his intrusion upon Plaintiff's curtilage — rather than Plaintiff's home — changes the Fourth Amendment analysis, the Court is unpersuaded.  The Supreme Court has clearly established curtilage is considered "part of the home itself for Fourth Amendment purposes."  *Collins v. Virginia*, 584 U.S. 586, 586 (2018) (internal citation omitted).

1  explained that requesting a motorist step out of a vehicle "can only be described as *de minimis*"

2  and therefore not a Fourth Amendment violation.  *Id.* (emphasis in original) (quoting

3  *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)).

4      Defendant appears to argue that officers entering Plaintiff's backyard is analogous to

5  officers requesting a motorist to step out of a car and therefore de minimis.  The Court is

6  unconvinced.  First, Defendant provides no further caselaw to suggest applying the de minimis

7  doctrine under these circumstances is appropriate.  Second, the Ninth Circuit appears skeptical as

8  to whether the magnitude of a physical intrusion is relevant to a Fourth Amendment analysis.  *See*

9  *U.S. v. Ngumezi*, 980 F.3d 1285, 1289 (9th Cir. 2020) (rejecting the argument that a "minimally

10  intrusive" action was not constitutionally significant because "the Supreme Court has never

11  suggested that the magnitude of a physical intrusion is relevant to the Fourth Amendment

12  analysis").  Absent convincing argument and caselaw, the Court finds the de minimis doctrine

13  inapplicable to the instant case.

14      Accordingly, the Court DENIES Defendant's motion for summary judgment on this

15  ground.

16          B.      Qualified Immunity

17      Next, Defendant argues he is entitled to qualified immunity.  (ECF No. 22-1 at 8.)

18  Qualified immunity shields officials from civil liability where a reasonable officer would not have

19  known that his conduct violated a clearly established right.  *Anderson v. Creighton*, 483 U.S. 635,

20  638–39 (1987).  It "gives ample room for mistaken judgments by protecting all but the plainly

21  incompetent or those who knowingly violate the law."  *Hunter v. Bryant*, 502 U.S. 224, 229

22  (1991).  An officer may be denied qualified immunity at summary judgment in a § 1983 suit only

23  if (1) the facts alleged, viewed most favorably to the plaintiff, show the officer violated the Fourth

24  Amendment by conducting a warrantless entry, and (2) the right was clearly established so a

25  reasonable officer would have known his conduct to be unlawful.  *Morales v. Fry*, 873 F.3d 817,

26  821 (9th Cir. 2017).  "[T]he two prongs of qualified immunity balance two important, competing

27  interests: the need to hold public officials accountable for irresponsible actions, and the need to

28  shield them from liability when they make reasonable mistakes."  *Id.* at 822.  The Court will

1    address each prong in turn.

2                    i.    *Violation of a Constitutional Right*

3            The Fourth Amendment safeguards individuals from unreasonable searches and seizures.

4    *Payton v. New York*, 445 U.S. 573, 590 (1980).  Searches inside a home without a warrant are

5    generally presumed unreasonable.  *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009)

6    (quoting *U.S. v. Martinez*, 406 F.3d 1160, 1163 (9th Cir. 2005)); *see also Collins*, 584 U.S. at 586

7    (internal citation omitted) (noting curtilage is considered "part of the home").  Defendant

8    concedes he entered Plaintiff's backyard without a warrant but argues he did not violate the

9    Fourth Amendment because his entry was lawful under the emergency aid exception.  (ECF No.

10   22-1 at 9.)

11           The emergency aid exception allows law enforcement to enter a home without a warrant

12   to aid an injured occupant or prevent imminent harm.  *Brigham City v. Stuart*, 547 U.S. 398, 403

13   (2006).  To determine whether the emergency aid exception applies, the Ninth Circuit applies a

14   two-part test that asks whether: (1) considering the totality of the circumstances, law enforcement

15   had an objectively reasonable basis for concluding that there was an immediate need to protect

16   others from serious harm; and (2) the search was reasonable.  *United States v. Snipe*, 515 F.3d

17   947, 952 (9th Cir. 2008).  Police officers bear a heavy burden to justify that the warrantless search

18   was conducted due to an urgent need because the emergency aid exception is "narrow" and

19   "rigorously guarded."  *See Bonivert v. City of Clarkston*, 883 F.3d 865, 876–77 (9th Cir. 2018).

20           At this stage, because a warrantless entry is presumptively unreasonable, Defendant bears

21   the burden of producing sufficient evidence to remove any triable issue of fact as to whether

22   emergency assistance was needed to aid an injured occupant or prevent imminent injury.  *See*

23   *Maric v. Alvarado*, No. 1:12-CV-00102-SKO, 2020 WL 949938, at *4 (E.D. Cal. Feb. 27, 2020)

24   (finding similarly).  Defendant attempts to meet this burden by relying on his own declaration and

25   bodycam footage.  (ECF No. 22-2 at 2–3.)  The Court finds this evidence wholly inadequate and

26   devoid of critical pieces of information that would allow a court to determine as a matter of law

27   whether the emergency aid exception applies.

28           For example, Defendant argues it was reasonable to conclude a welfare check was needed

                                                    6

after he was told by a fellow officer that a woman "had fallen" out of Plaintiff's truck "before it came to a stop" and the woman had "fled into the backyard."[4]  (ECF No. 22-1 at 9.)  However, it is unclear whether there was an actual or imminent injury unfolding at the time Defendant entered the backyard.  *See, e.g.*, *Bonivert*, 883 F.3d at 877 (noting the Ninth Circuit has declined to apply the emergency aid exception when there is insufficient information to provide an "objectively reasonable basis for [the officer] to believe[e] that an *actual or imminent injury* was unfolding in the place to be entered" (emphasis in original)).

First, there are no undisputed facts indicating the woman was in imminent danger of injury.  To the extent Defendant is attempting to argue Plaintiff posed an imminent threat to the woman, the bodycam footage appears to show Plaintiff in front of the house surrounded by police officers.  (ECF No. 22-4; *see also* ECF No. 24-2 ¶ 4–8.)  In other words, Plaintiff was separated from the woman at the time of entry.  Thus, the Court finds there is a triable issue of fact as to whether Plaintiff posed an immediate danger to the woman thereby implicating the emergency aid exception.  *See, e.g.*, *Bonivert*, 883 F.3d at 877 (holding the exception did not apply because the alleged victim was separated from the possible threat); *Maric*, 2020 WL 949938, at *4 (holding a triable issue of fact where there was no evidence perceived victims "were injured or relayed any threat of 'immediate danger' when Defendants arrived"); *cf. Martin v. City of Oceanside*, 360 F.3d 1078, 1082 (9th Cir. 2004) (applying the emergency aid exception when the possible threat was inside the home with the alleged victim).

Second, there are no undisputed facts to indicate the woman was actually injured.  While Defendant argues it was reasonable to conclude that the sequence of events indicated a domestic

---

[4]      Defendant further argues it is irrelevant whether he personally observed the incident because police officers can rely on information obtained from fellow officers.  (ECF No. 22-1 at 9 (citing *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012).)  In opposition, Plaintiff provides no contrary authority on this point and only passively appears to argue Defendant cannot rely on the information obtained from his fellow officers.  (ECF No. 24 at 3 (arguing "[e]ven if [Defendant] was entitled to rely on information obtained from fellow police officers[.]")  As such, the Court focuses solely on whether Defendant's reliance on the information was objectively reasonable rather than whether reliance on the information was appropriate at all.

violence dispute — thereby necessitating a welfare check — the Court finds Plaintiff presents evidence in opposition that raises a triable issue of fact on this point.  (ECF No. 22-1 at 9; ECF No. 24-1.)  Plaintiff contends no reasonable officer would have concluded there was a risk of domestic violence at the time of the entry because Defendant knew or should have known the woman was not in immediate danger.  (ECF No. 24 at 3.)  To support this argument, Plaintiff relies on his own declaration as well as Jeanna Nunes's — the woman involved in the underlying incident.  (ECF No. 24-2; ECF No. 24-3.)  According to Plaintiff and Nunes, Officer Tegeler, who entered the backyard with Defendant, had previously attempted to speak with Nunes, but Nunes refused and went inside the house and locked the door.  (ECF No. 24-2 ¶ 9; ECF No. 24-3 ¶ 8.)  Taking all reasonable inferences in Plaintiff's favor, the Court finds there is a triable issue as to whether the information Defendant received would have led an objectively reasonable officer to conclude a welfare check was required.

As the Ninth Circuit noted in *Bonivert*, "facts matter" and here there are at least triable issues of fact as to whether there was an actual or imminent injury unfolding.  883 F.3d at 878.  To conclude otherwise based on such scant evidence from Defendant "would eviscerate the warrant requirement[.]"  *Id.*

### ii.    *Clearly Established Law*

Defendant argues that even if his entry could be deemed a Fourth Amendment violation, he is still entitled to qualified immunity because he did not violate clearly established law.  (ECF No. 22-1 at 9.)  According to Defendant, Plaintiff must cite an analogous case where it was found that an officer entering a backyard without a warrant with the same information Defendant possessed constitutes a Fourth Amendment violation.  (*Id.* at 10.)  In opposition, Plaintiff argues the Fourth Amendment's protection against warrantless searches was clearly established before the incident in question and widely recognized by reasonable officers.  (ECF No. 24 at 3.)

"Among constitutional rules, few are as well established, frequently applied, and familiar to police officers as the warrant requirement and its exceptions."  *Bonivert*, 883 F.3d at 872–73.  If it is clearly established that none of the exceptions to the warrant requirement apply, then the entry violated clearly established law.  *See Maric v. Alvarado*, 748 F. App'x 747, 751 (9th Cir.

2018) (unpublished).  As discussed above, there is a triable issue of fact as to whether the emergency aid exception applies.  As such, summary judgment is inappropriate on this issue. *See, e.g.*, *Bonivert*, 883 F.3d at 878 (finding officers were not entitled to qualified immunity under the emergency aid exception); *see also Maric*, 2020 WL 949938, at *7 (E.D. Cal. Feb. 27, 2020) (finding summary judgment inappropriate on qualified immunity grounds where triable issues of fact remained regarding the emergency aid exception).  Accordingly, the Court DENIES Defendant's motion for summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby DENIED.  (ECF No. 22.)  The parties are hereby ordered to file a Joint Notice of Trial Readiness within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial on Plaintiff's remaining Fourth Amendment claim.

IT IS SO ORDERED.

Date: March 27, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

9